CHARLES STOKES, EX., *vs.* REBECCA TILLY.

1. The intention of the testator is the law of wills, and when that intention can be ascertained, if not in violation of the rules of law, it will prevail over technical rules, and words in their technical or even ordinary meaning. The word "children" has a technical meaning in legal instruments. It is a word of *purchase*, and yet if it appears to have been the intention to use it in a different sense, as a word of *limitation*, it will be so construed, in order to effectuate that intention.

2. A residuary clause in a will was in the following words: "I bequeath all the rest, residue and remainder of my estate, real and personal estate wheresoever, after the above legacies and money are taken out, then the remainder to be equally (divided) between the child or children of my nephew, Acquila S. Ridgway, and my sister, Rebecca Tilly, each one to have an equal share thereof, and his children, or if but one child he should leave, to have its or their share with my sister, with the interest arising on each one's share paid them when and as they arrive at lawful age, whether then their father is deceased or living, *and for all my nieces and nephew, Wallace Lippincott, the children of my deceased nephew, Stacy Lippincott, to take their equal share therein with my sister Rebecca and the children of Acquila S. Ridgway.*"

3. *Held*—that the children of Stacy Lippincott, deceased, take *per capita*.

This case was argued at February Term, 1852.

The only question involved was, whether the children of Stacy Lippincott took "*per capita*," *under the residuary clause* of Hope Haines' will.

The phraseology upon which the question of construction depended is set out in full in the opinion of the Chancellor.

*Peter D. Vroom*, for the complainant.

*William L. Dayton*, for two of the defendants.

*A. Browning*, for other defendants.

THE CHANCELLOR. The question in controversy arises upon the residuary clause in the will of Hope Haines, deceased, which is in the following words:

"I bequeath all the rest, residue, and remainder of my estate, real and personal estate wheresoever, after the above legacys and money are taken out, then the remainder to be equally between the child or children of my nephew, Acquila S. Ridgway and my sister, Rebecca Tilly, each one to have an equal share thereof, and his children, or if but one child he should leave, to have its or their share with my sister, with the interest arising on each one's share paid them when and as they arrive at lawful age, *wether* their *their* father is deceased or living, *and for all my nieces and nephew, Wallace Lippincott, the children of my deceased nephew, Stacy Lippincott, to take their equal share therein with my sister Rebecca, and the children of Aquila S. Ridgway.*"

The residuary estate amounts to the sum of $8056.81¾.

Charles Stokes, the surviving executor of this will, exhibits his bill for the purpose of obtaining a judicial construction of this clause, to direct the proper distribution of the residuary estate.

The testatrix left, at her decease, a sister Rebecca Tilly, an infant child of her nephew, Acquila S. Ridgway, Mary L. Haines, a widow, and Sarah Ann Pancoast, wife of Israel Pancoast, daughters of Wallace Lippincott, deceased, her nieces; Wallace Lippincott, her nephew, and son of Wallace Lippincott, deceased; Sarah Stokes, wife of Benjamin R. Stokes; Hope Deacon, wife of William H. Deacon, daughters of her sister, Rebecca Tilly; Sarah Ann Roberts, wife of Isaac Roberts, Nathaniel Lippincott, and Hope Lippincott, which Sarah Ann, Nathaniel and Hope, are children of Stacy Lippincott, the deceased nephew of the testatrix.

Sarah Ann Roberts, the daughter of the testatrix's deceased nephew, Stacy Lippincott, and her husband, Isaac Roberts, by their joint and several answer, insist that, under the residuary clause of this will, the children of Stacy Lippincott, deceased, take "*per capita.*" If this is so, Sarah Ann Roberts is entitled to the one-tenth of the residuary estate.

Wallace Lippincott, Mary L. Haines, Israel Pancoast, and Sarah Ann, his wife, by their joint and several answer, in-

sist that the children of Stacy Lippincott, deceased, take *"per stirpes."* If this latter construction is the correct one, then the said Wallace, Mary, and Sarah Ann Pancoast take each one-eighth of the residuary estate, and Sarah Ann Roberts, who, with her sister, Hope Lippincott, and her brother, Nathaniel Lippincott, represent their father, Stacy Lippincott, deceased, takes, instead of one-tenth, as she insists, only one-twenty-fourth part.

What was the intention of the testatrix? Did she intend the children of her deceased nephew, Stacy Lippincott, to take each one equal share with her nieces and nephew, or did she intend they should take *"per stirpes,"* as the representatives of their deceased parent?

"The intention of the testator is the law of wills," and when that intention can be ascertained, if not in violation of the rules of law, it will prevail over technical rules, and words in their technical, or even ordinary meaning. The word "children," and which is the word used in the clause of the will we are considering, has a technical meaning in legal instruments. It is a word of purchase, and yet, if it appears to have been the intention of the testatrix to use it in a different sense, as a word of limitation, it will be so construed, in order to effectuate that intention.

Upon reading this residuary clause, the first impression, I think, made upon the mind is, that the testatrix intended an equal division *"per capita,"* among all the objects of her bounty therein referred to. A critical examination confirms the correctness of the impression.

Let us examine its language:

"I bequeath all the rest, residue, and remainder of my estate, real and personal estate wheresoever, after the above lega*c*ys and moneys are taken out, then the remainder to be equally between the child or children of my nephew, Acquila S. Ridgway, and my sister, Rebecca Tilly, each one to have an equal share thereof, and his children, or if but one child he should leave, to have its or *their* equal share with my sister."

There can be no doubt but that the children of Acquila

S. Ridgway take "*per capita.*" Rebecca Tilly, the sister of the testatrix, was to have one share, but the child or children of Acquila S. Ridgway and Rebecca Tilly were "each one to have an equal share thereof:"

Then comes the provision in question, "and for all my nieces and nephew, Wallace Lippincott, the children of my deceased nephew, Stacy Lippincott, to take their equal share therein with my sister Rebecca and the children of Acquila S. Ridgway."

But the children of Acquila S. Ridgway were "each one to have an equal share thereof." If, then, the children of Stacy Lippincott are to have an equal share with the children of Acquila S. Ridgway, then they are "each one to have an equal share thereof."

The testatrix speaks of the "children" of Stacy Lippincott and the "children" of Acquila S. Ridgway. Did she mean a different interpretation to be put upon the same word repeated in the same sentence and within three lines? When she speaks of the "children" of Stacy Lippincott does she mean it a word of limitation? and when she speaks of the "children" of Acquila S. Ridgway, as a word of designation?

We have seen she has put her own interpretation on the word "children" as connected with Acquila S. Ridgway, and as a "*descriptio personarum*," and that each child of Acquila S. Ridgway was to have an equal share with Rebecca Tilly.

But again. The "children" of Stacy Lippincott are to have an equal share with Rebecca Tilly. But the "children" of Acquila S. Ridgway are "each one of them" to have an equal share with Rebecca Tilly. So, then, must the children of Stacy Lippincott, "each one of them," have an equal share with Rebecca Tilly, or the children of Stacy Lippincott cannot have an equal share with the children of Acquila S. Ridgway.

Here are three children of Stacy Lippincott, deceased. If at the death of the testatrix, there had been three children of Acquila S. Ridgway living, they would have taken

"*per capita*" and have been entitled to three shares of this residuary estate. The three children of Stacy Lippincott take a like interest.

It was argued that this construction gives to those related in the second degree to the testatrix, only equal shares with those who are one degree more remote; that if the construction of the will be secure and doubtful, the rule is to re-solve the doubt in favor of that construction which best corresponds with our natural affections, and with the law of distribution.

It is apparent the testatrix had no allusion to the statute of distribution. Nor did she intend to conform to our general notions of an equitable division of property among her kindred. She makes an arbitrary disposal of all her estate, both in this and in other parts of her will.

In the clause in question, she gives to her sister, Rebecca Tilly, one share, and she gives likewise to Rebecca's two daughters each a share equal to her mother. Rebecca and her family get three shares, while her brother, Wallace Lippincott's family get four shares, upon the most unfavorable construction of the will. Another branch of the family, represented by Acquila S. Ridgway, the son of a deceased sister, receives one share only, there being but one child of his living at the death of the testatrix. This inequality is not reduced by other parts of the will.

Other clauses of the will, and the seventh particularly, were referred to by the counsel on both sides, in the argument, as a key to the intention of the testatrix in reference to this particular clause. There is room to draw arguments in favor of both views presented.

It is plain, the testatrix did not use the word "children" with any reference to its technical legal signification. Wherever she uses it, it is with explanations, or with the addition of some significant word to indicate her own meaning of the term.

In the seventh, in bequeathing the principal sum of four thousand dollars to the children of her nieces, Sarah Stokes and Hope Tilly, after securing to their parents the interest

of the same during their lives, she gives the principal to the children *"per stirpes."* It is evident from her language that she was laboring to keep this idea prominent, and to have no misapprehension about her intention. And yet, in this same clause, when she comes to dispose of the two thousand dollars, upon the happening of certain contingencies, it is in this language—"to go to my nieces, Mary Haines children and Sarah Ann Pancoast children, and the children of my deceased nephew, Stacy Lippincott, equally divided and paid between them *all."* The single word *all* here being added to signify her intention.

In the fifth clause of the will, in disposing of other two thousand dollars, upon the contingency of the death of her nephew, Wallace Lippincott, it is in these words—"at his death, equally between his sisters, Mary Haines and Sarah Ann Pancoast, and the children of his deceased brother, Stacy Lippincott," which is very nearly the identical phraseology of the will in the case of *Butler* v. *Strattan*, in 3 *rown's Rep.* 367, and where it was decided the devise was *er capita."* And yet the testatrix expressly declares this s not *her* meaning, for she adds, "that is, for his children take the one-third of said two thousand dollars equally tween them, being the share thereof their father would been entitled to if living."

I have examined all the authorities referred to in the argument, but it is manifest they can be of very little assistance upon a construction depending, as this does, so much upon mere phraseology, and where there is no room for the application of technical rules or definitions.

The counsel who contended for the construction *"per stirpes,"* relied upon the case of *Roome et al.* v. *Counter,* 1 *Hal.* 111, as an authority of our own tribunals, which should govern the court in the decision of this case. He contends that it condemns the case of *Blackler* v. *Webb et al.,* 2 *P. Wms.* 383, and therefore the court should not consider the latter case as authority. In the case in *P. Wms.* the will was a very different one in phraseology and technical terms from that decided upon in *Roome et al.* v. *Counter,*

Stokes v. Tilly.

and so it is remarked by the court in their opinion in the latter case. There is, it appears to me, no resemblance between the case in 1 *Hal.* and the present one. The Chief Justice, certainly, did not mean to say that there is no different meaning attached to the word "heirs" and the word "children," or that the word "children," in its technical signification, is not a word of purchase. And if he did not so decide, I cannot see in the case anything which I ought to consider as authority to govern me in this decision.

My opinion is, that the children of Stacy Lippincott, deceased, take, under the residuary clause of this will, "*per capita.*"

Let a decree be made accordingly.

CITED *in Provost's Ex'rs* v. *Provost,* 12 *C. E. Gr.* 297.