# Lewis' Appeal.

1. A testatrix devised to her niece D. W. Francis, certain real estate for life, and directed that after the death of her said niece the property to be sold by the executors of the testatrix or the survivor of them: She further devised as follows: "And I give two sixth parts of the net proceeds thereof to her daughter Anne Francis, one sixth to Willing Francis, one sixth to John Francis, one sixth to Mary Page, and the remaining sixth part to Thomas Francis, children of my said niece." "If one or more of the said children should happen to die before their mother, *without leaving any children*, the share of such child or children so dying, shall be equally distributed among the survivors of the said brothers and sisters; if, however, such child or children so dying, shall leave a child or children, such child or children shall be entitled to their parent's share." The tenant for life died in 1847, leaving her daughter Anne the only survivor of her children the legatees aforesaid; one of the sons having left two children, and one of the daughters having left three children, the two other sons having died without leaving issue: It was *held*, that the shares or two sixth parts of the two sons who died *without leaving children*, should go, not to the surviving sister alone, but to her and the children of her deceased brother and sister, the children of each of the said deceased legatees together taking the one-third of the said two-sixths.

2. *Held*, that the expenses incident to the sale of the said real estate, be allowed out of the fund, but that the charges for fees and commissions should not be taken out of the fund, but were a claim upon general settlement of the estate of the testatrix.

APPEAL from the decree of the Orphans' Court, *Philadelphia*, on an auditor's report upon the account of Eli K. Price, and J. B. Townsend, executors of the will of Edward S. Burd, deceased, who was surviving acting executor of the will of Elizabeth Powell, deceased. The appeal was entered by Samuel N. Lewis and Sophia H., his wife, in right of said Sophia and Rebecca H. Francis; Nathaniel Burwell and Dorothy W., his wife, in right of said Dorothy; Jonathan M. Wainwright and Maria, his wife, in right of said Maria; Joseph Pleasants and Anne F., his wife, in right of said Anne, and Anne Francis Bayard.

The amount in the possession of the executor for distribution was $23,185.39.

The auditor, *inter alia*, reported as follows:

This fund arises from the sale of certain real estate by Edward S. Burd, the accountant, under the power contained in the following clause of the will of Elizabeth Powell, the testatrix, who died in the month of January, 1830.

[Lewis' Appeal.]

Item. I give and devise unto my "niece, Dorothy W. Francis, all that house and lot of ground, situate on the west side of Second street, in the city of Philadelphia, called the City Tavern, and the house and lot thereunto adjoining, being the estate rented by me to the Committee of Merchants. Also, the house and lot on Walnut street, between Second and Third streets, at present in the occupancy of Gabriel Coit, for and during the time of her natural life, without impeachment of waste; and upon her death I do direct all the said property to be sold in fee simple by my executors or the survivors or survivor of them, in such manner as they shall deem most eligible. And I give two sixth parts of the net proceeds thereof to her daughter, Anne Francis, one sixth part thereof to Willing Francis, one sixth part thereof to John Francis, one sixth part thereof to Mary Page, and the remaining sixth part thereof to Thomas Francis, they being children of my said niece, Dorothy W. Francis. If one or more of the said children should happen to die before their mother, without leaving any children, the share of such child or children so dying shall be equally distributed among the survivors of the said brothers and sisters; if, however, such child or children so dying shall leave a child or children, such child or children shall be entitled to their parent's share."

Mrs. Francis, the tenant for life, died on the 3d of August, 1847, and the property was sold by Edward S. Burd, as executor of Elizabeth Powell, in July, 1848. The account referred to the auditor was filed on the 1st of August, 1848, and was confined to the proceeds of the said sale, and certain rents for the said property received by the executor after the death of Mrs. Francis. In this account the executor claimed credit for expenses paid in relation to the sale of the property, and for filing and publishing the account; for a collateral inheritance tax, at $2\frac{1}{2}$ per cent. on the net amount, and 5 per cent. for his commission as executor.

Exceptions to the allowance of these credits were filed on behalf of the surviving daughter and grandchildren of Mrs. Francis.

The first exception was to the credit claimed for expenses incident to the sale of the property. The auditor reported as follows :—

The exceptants object to the allowance of credit for these items, on the ground that they are all expenses incident to the execution of Mrs. Powell's will, and payable out of the residue of her estate by law, and under the particular provisions of this will; and they refer to a subsequent clause of the will, by which the testatrix directs that all her personal estate (with the exception of certain articles specifically bequeathed) "shall be a fund in the hands of her executors for the payment of all pecuniary legacies, for the payment of annuities, and for defraying all the expenses incident to the execution of this will;" and authorizes the executors to retain the constant command of such sums as they may deem prudent,

in order properly and without inconvenience to themselves to execute this her last will and testament.

To this it was replied, on behalf of the accountant, that these expenses were immediately connected with the sale of the property for the benefit of those legatees; and that the bequest of the "*net proceeds*" thereof to the children of Mrs. Francis shows the intention of the testatrix that such expenses should be deducted before the division of the fund.

This appears to the auditor to be the proper construction of the will, and he therefore thinks that credit should be allowed for these expenses.

The second and third exceptions were to the charge of fees paid to the register on filing this account, and of commissions as claimed by the executor.

These exceptions were made on the ground that these charges are part of the general expenses of the execution of the will, which, by the general rule of law, are to be defrayed out of the residue of the estate; and that in this case the testatrix, in the clause already referred to, expressly directed that all the expenses of the execution of her will should be defrayed out of the personal estate. And it was further objected, that if any commissions were to be allowed, the amount claimed (viz. 5 per cent. on the whole amount received) was too great, it being admitted that the commissions charged in former accounts of this executor, in relation to the general estate of the testatrix, were only 3½ per cent.

For the accountant it was urged, that this was a distinct devise of a valuable portion of real estate, and was a *trust* beyond the ordinary duties of an executor, of a special character, and for a particular object, which ought to bear the burden of its own charges; and that by the very clause of the will under which the exceptants claim, the direction is given to divide the "*net proceeds*" only of this property among them, which means that all charges upon this fund are to be first deducted.

It appears to the auditor, that by the "*net proceeds*" is meant the sum in the hands of the executor, arising from the sale of the property after deducting the expenses incident to the sale, and that this sum is bequeathed to the children of Mrs. Francis, and ought to be paid to them without any deduction for commissions or other expenses, which are a general charge upon the whole estate for the performance of the whole duties of executing the will, to be paid out of the residue where the estate is sufficient; and this is confirmed in this particular case by the direction that the personal estate shall be a fund for the payment of all expenses of this kind.

The auditor is therefore of opinion that these charges ought not to be allowed in this account, which is only partial, but that the executor should make his claim for them on the general settlement of the estate.

[Lewis' Appeal.]

If this view be correct, the question as to the amount of commissions to be allowed will be properly referred to the settlement of such future account.

The fourth exception was to the item of $571.87, paid for collateral inheritance tax.

This, it was alleged, had probably been paid by the tenant for life; and if not, the exceptants contended that credit should be allowed only for the apportioned sum chargeable to their interest as a remainder after the life estate, and not for the whole amount of tax.

There was no evidence of any payment having been made on this account by the tenant for life; and as the "*net proceeds*" of the property sold passes by this bequest to the children of Mrs. Francis, the auditor thinks it was the duty of the executor to pay the tax on this amount, and therefore that credit should be allowed for the same.

A claim was made by the executor of Mrs. Francis, the tenant for life, for a proportionate part of the taxes for the property sold, for the year 1847, amounting to $312.36, the whole of which were paid by Mrs. Francis and her executor, although she died on the 3d of August in that year. It appears, however, to the auditor, that the charge for taxes on real estate is a personal charge upon the owner of the property at the commencement of the year after the taxes are assessed; and that, therefore, the taxes on this property for the year 1847 were the personal debt of Mrs. Francis, and properly paid by her and her executor. He thinks, therefore, that this claim should not be allowed.

With regard to the distribution of the fund in the hands of the executor, produced by the sale of this property, a question arises from the changes which have taken place in the family of Mrs. Francis since the death of the testatrix. Mrs. Francis, the tenant for life, died in the year 1847, leaving her daughter Anne, (now Mrs. Anne F. Bayard), the only survivor of the legatees named in the clause of Mrs. Powell's will. All the others had died during the lifetime of their mother. Of these, Willing Francis died in 1833, leaving two children, Mrs. Sophia H. Lewis and Rebecca H. Francis; Mary Page died in 1827, leaving three children, Mrs. Burwell, Mrs. Wainwright, and Anne F. Page; John Francis, died in 1828, without issue, and Thomas Francis died in 1841, also without issue.

The testatrix having directed this property to be sold after the death of Mrs. Francis, says: "And I give two sixth parts of the net proceeds thereof to her daughter, Anne Francis, one sixth part thereof to Willing Francis, one sixth part thereof to John Francis, one sixth part thereof to Mary Page, and the remaining sixth part thereof to Thomas Francis, they being the children of my said niece, Dorothy W. Francis. If one or more of the said

[Lewis' Appeal.]

children should happen to die before their mother, without leaving any children, the share of such child or children, so dying, shall be equally distributed among the survivors of the said brothers and sisters: if, however, such child or children, so dying, shall leave a child or children, such child or children shall be entitled to their parent's share."

It was contended, on behalf of Mrs. Bayard, that as by the express terms of the will the shares of those who should die during the lifetime of Mrs. Francis, leaving no issue, should be "distributed among the survivors of the said brothers and sisters," she being the only survivor was entitled to the shares of John and Thomas, who had so died without issue.

But on behalf of the children of Willing Francis and Mrs. Page, it was contended that, as by the will the child or children of the deceased legatees are declared to be "entitled to their parents' shares," they ought to have the same portions of the shares of John and Thomas which their parents would respectively have been entitled to if living at the time of the death of Mrs. Francis.

It appears to the auditor, that the proper construction of the will is, that the shares of those dying before their mother, without issue, were to be given to the surviving children of Mrs. Francis ("the said brothers and sisters,") who were the immediate objects of the testatrix' regard; and that the issue of such as should die in their mother's lifetime were to be substituted in their parent's place only as to the shares expressly given to them. Upon this construction, Mrs. Bayard will be entitled to the shares of John and Thomas.

A claim was made on behalf of Miss Anne F. Page as legatee of Mrs. Dorothy W. Francis, to one-third of the sixth part bequeathed by Mrs. Powell to John Francis.

Mrs. Wainwright, one of the children of Mary Page, was born on the 23d of January, 1822. Mrs. Burwell, another of the children of Mary Page, was born on the 1st of June, 1823, and Miss Anne F. Page was born on the 18th August, 1824. As already stated, John Francis died in the year 1828, in the lifetime of the testatrix, without issue, leaving his sister Anne, and his brothers Willing and Thomas surviving him. Thomas Francis died in 1841, without issue, having by his last will and testament, dated the 10th March, 1841, bequeathed all his property to his mother, Dorothy W. Francis; and Mrs. Francis, by her last will, dated the 3d of April, 1847, bequeathed to Anne F. Page, whatever interest, if any, she was entitled to in the premises in Second and Walnut streets, (the proceeds of which form the subject of this account) under the will of her son Thomas.

The claim of Anne F. Page is founded on the supposition that Thomas Francis (though he did not survive his mother) was entitled to one-third of the sixth part bequeathed by Mrs. Powell

to his brother John, who died in 1828. But the auditor is of opinion that neither John nor Thomas became entitled to any part of the proceeds of this property, and therefore the claim was disallowed.

A similar claim was made on behalf of Mrs. Lewis and Rebecca H. Francis, the daughters of Willing Francis, for one-third of the sixth part bequeathed to John Francis, on the ground that their father, Willing Francis, became entitled to this portion on the death of his brother John. But for the same reasons as above, this claim also was disallowed.

The auditor reported an account and distribution.

The net amount for distribution he stated to be $24,382.39; and he awarded to Mrs. Bayard her own two-sixths, and John's one-sixth, and Thomas one-sixth; amounting in all to $16,254.92⅔; to the three children of Mrs. Page, $4063.73⅔; and Mrs. Lewis, and Miss Francis, each $2031.86⅓.

After the foregoing report was prepared, it was agreed by the parties that the auditor should insert and state in his report the following fact, viz. :—At the date of the will of the testatrix, Elizabeth Powell, and at the time of her death, there were living three children of her niece, Dorothy W. Francis, viz., Elizabeth, Charles, and Alfred, other than those mentioned in the devise of the property on Second street.

Various exceptions to the report were filed, all of which were overruled, except exceptions by the executors of the will of Edward S. Burd, to the non-allowance of credits asked for fees and commissions, which were directed to be paid out of the funds. The report of the auditor was confirmed in all other respects.

Appeal was entered to the Supreme Court.

The case was argued by *S. Lewis, Gilpin, Townsend,* and *Price ; Randall, Meredith, McCall, Campbell,* and *Pierce.*

The opinion of the Court, filed May 17, was delivered by

LOWRIE, J.—Acts of Assembly, being the expression of the general mind, have a consistency of intention, which allows us to start with the presumption that those *in pari materia* have the same general purpose; and this enables us to apply, with great advantage, the aid of analogous construction. But in all the variety of principles, motives, and objects by which individual minds are governed, these aids have a very uncertain value; for we cannot assume, in the comparison of one will with another, that there is any community of intention between them. When, therefore, the construction put upon one will is presented in order to aid us in construing another, we are in danger of applying an irrelevant standard, or one, it may be, which is the result of a careless application of principles, which we should apply to each case for

ourselves. This case can be most satisfactorily settled on undisputed principles.

This will is clear enough in dividing the fund among five of the children of Mrs. F., giving to one of them two-sixths, and to each of the others one-sixth; and if there had been no more, the interest of each would have been finally vested and transmissible to their personal representatives. One alone of the children named survived the mother, two died leaving, and two without, children. The question is, do the shares of the two who died without children, go, under the limitation clause, to the surviving child alone, or to her and the children of her deceased brother and sister ?

*Qui hæret in litera hæret in cortice*, is a caution that applies in all cases of construction, and means that that is a shallow interpretation which sacrifices the general intent to a mere verbal criticism. Yet, as it is only through words that we can reach any intent, whether general or special, they cannot be assumed to be inaccurate, except in deference to an ascertained general intent. Very few writings would bear the criticism of a narrower rule, and we shall certainly fall into the vice of which this proverb warns us, if we adhere to a strict verbal interpretation of the various substitutionary clauses. For example, the will says, that each share shall go over, on a legatee dying "without leaving children," when it is clearly meant, "without leaving children living at the time fixed for distribution." Otherwise, on such a death, the share would fully and finally vest in such children, and could not be affected by the death of all or any of them. Then we should have the personal representatives of some of the children claiming here some of the shares, though it is manifest that the general intent excludes the personal representatives, and settles the actual distribution according to the state of the survivorship at the death of Mrs. Francis. Even the word "share" will not bear the strict construction contended for on Anne's behalf ; for when John died, his share went to Willing, Thomas, and Anne, and on the death of Willing and Thomas, she would have to claim it through them. In other words, she herself claims an increased share, under the clause giving over the "shares."

It is an excellent rule of interpretation, that the interpreter should place himself as nearly as possible in the circumstances, and enter as far as possible into the feelings which influenced the writer ; and we may attempt this. Starting with the general intent that the actual distribution shall depend upon the state of the survivorship at the death of Mrs. F., we are to reach the special intent—what survivorship is intended ?

The will declares, "if one or more of the said children should happen to die before their mother, without leaving any children, the share of such child or children, so dying, shall be equally distributed among the survivors of the said brothers and sisters; if,

however, such child or children so dying shall leave a child or children, such child or children shall be entitled to their parents' share."

Here she speaks of shares of variable quantity; for she is providing for a contingent increase of them, that may have many gradations. One may have his share increased before dying without children, and that increased share will go over. Even if she did use the word "share" in the first place as meaning one-sixth, she then provides for its increase, and when, after that, she uses it, she should be presumed to mean an increased share. Her meaning would then seem to be that the intended share, whether increased or not, of one dying childless, shall go over, and such intended share of one dying leaving children, shall go to them.

Again, she declares, that if any one die without children, his share shall go over; to whom? Why, the case she is supposing requires her to say to the other "brothers and sisters;" for as yet, in her mind, the case of one dying leaving children has not arisen. But next she speaks of this, and declares, "if however" the one who dies shall leave children, they shall have their parent's share. "However" is most emphatic here, if we keep up the connection of the thought. It indicates an alternative intention, a contrast with the previous clause, and a modification of it under other circumstances. It is thus—I do not however so dispose of the survivorship in the case of those who die leaving children, but such children shall take the share which their parent, if surviving, would have taken.

There is yet another view that leads to the same result. By the granting clause an absolute vested interest is given to each legatee, and it is in the limitation clause that we find the difficulty. In the first of them, the limitation over is in case of any one dying childless, and it is an obvious corollary of this clause that, if one does not die childless, his children shall take, as in the case of an estate tail; and this thought would naturally be now dismissed from the writer's mind, before proceeding to the next subject. The last clause of the limitation is mere redundancy, if it only repeats this idea, and the word "however" loses its value. But if this clause stands in the contrast already indicated, it expresses an additional thought, and all the words and clauses have a positive value. Then what share do the children of a deceased legatee take? Manifestly what their parents would have taken, if living. When she declared that the surviving brothers and sisters should have the accretion, she could not express her whole meaning by simply adding to the clause, "and the children of those deceased;" for then, besides the thought being out of place, those children would claim *per capita* and not *per stirpes*; and therefore she qualified her partially expressed intention as to the survivorship by

[Lewis' Appeal.]

an additional clause, giving the children of a deceased legatee the right of survivorship which their parent would have had.

We need not notice the case of Watson v. England, 15 *Sim.* 1, further than to say that the reverse order in which the contingencies are there stated is very material, and throws the word "but" into a position which requires a different contrast from that raised here by the word "however."

As to all the other points discussed, it is enough to say that the auditor of the Orphans' Court decided them rightly, and for sufficient reasons.

> Decree : This cause came on to be heard on appeal from the Orphans' Court of the city and county of Philadelphia, and was argued by counsel; and thereupon, on consideration thereof, it is ordered, adjudged, and decreed, that the decree of the said Orphans' Court be and the same is hereby reversed, and that the record be remitted to the said Court, which is hereby instructed to confirm the report of their auditor in all respects, except as to the distribution of the net proceeds of the fund bequeathed ; and as to that, to distribute the same in such manner that Anne F. Bayard shall have two-sixths and one-third of two-sixths, that is to say, eight-eighteenths thereof; that the children of Willing Francis, deceased, shall together have one-sixth and one-third of two-sixths, that is to say, five-eighteenths thereof in equal proportions; and that the children of Mary Page, deceased, shall together have the same amount, that is to say, five-eighteenths thereof in equal proportions. And it is further ordered, adjudged, and decreed, that the executors of Edward S. Burd pay the costs occasioned by them on their claim disallowed here ; that the other costs in this Court be paid by Anne F. Bayard ; and that all other costs be deducted out of the fund standing for distribution.