The First National Bank of Toms River, New Jersey, as trustee under the last will and testament of Harriet Levy, deceased, complainant-respondent,

*v.*

Saul Levy and Joseph Levy, executors of the last will and testament of Samuel Levy, deceased, et al., defendants, and Birdie L. Jennings, defendant-appellant.

[Submitted May term, 1941. Decided September 19th, 1941.]

*Mr. Robert A. Lederer,* for Samuel L. Cohen and Milton M. Cohen, individually and as executors of the estate of Rosa Cohen, deceased.

*Mr. David A. Veeder,* for the defendant-appellant.

The opinion of the court was delivered by

Case, J.

The issue arises out of the method pursued by the Court of Chancery in determining what rate of abatement should be applied to an annuity bequest to Birdie L. Jennings and to general bequests of cash sums to other legatees. Harriet Levy provided in her will (for the pertinent provisions of which see *First National Bank of Toms River* v. *Levy, 123 N. J. Eq. 21*) for an annuity to be paid to her husband, Samuel Levy, during his lifetime and an annuity to be paid to Birdie L. Jennings during the same lifetime. She also provided

for the payment, after Mr. Levy's death (and it is upon this situation that the litigation rests), of "the sum of $2,000 annually, to be paid to her (Birdie L. Jennings) in equal monthly payments during the term of her natural life" and for the payment of the sum of $5,000 each to Rosa Cohen, Samuel L. Cohen and Milton M. Cohen. Other bequests were to take effect upon the death of Mrs. Jennings. A final decree was entered pursuant to the Chancery opinion, *supra*. The opinion held that the gifts to Mrs. Jennings and to the Cohens were general legacies which, in view of the deficiency of the assets, must abate proportionately and that reference should be made to a master to determine the value of the annuity and the amount of the abatement. The matter was referred to a master who, on May 17th, 1939, reported that the bequest of $2,000 per annum to Mrs. Jennings, computed in the manner directed, was of the value of $30,886.20, that that amount and each of the three legacies to the Cohens should abate at the rate of 7.65%, resulting in the reduction of each of the Cohen legacies to $4,617.50 and of the cash value of Mrs. Jennings' gift of income to $28,523.41; and that the last named amount of $28,523.41 must be kept intact for distribution at Mrs. Jennings' death in accordance with the provisions of the will. Application was then made on behalf of Mrs. Jennings to amend the final decree. The opinion of the Vice-Chancellor denying that application is reported in *126 N. J. Eq. 493*. Mrs. Jennings then filed exceptions to the report. The exceptions went to the same points as did the application to amend the final decree, wherefore the opinion, *supra,* reported in *126 N. J. Eq. 493,* may be taken as the reasoning by the Vice-Chancellor for overruling the exceptions and confirming the report. We find no separate memorandum with respect to the last mentioned order.

The exceptions taken to the report went to these propositions: first, that the master had computed the cash value of the annuity on the combined 4% annuity table in effect on that date whereas that rate of interest was in excess of any that could reasonably be expected and that a rate not in excess of 2½% should have been used; second, that the

abatement of 7.65% against the annuity to Jennings and the gifts to the Cohens resulted in a disproportionately large reduction of the Jennings gift for the reason that what was calculated as the present cash value of the annuity was not in fact to be paid to Jennings but was to be invested and the income therefrom paid to her; third, that the master failed to take into consideration the expense of the continued operation and administration of the Jennings trust fund.

The appeal is from the order overruling the exceptions and confirming the master's report.

The holding in the original Chancery decision upon which the final decree in the cause rested, *123 N. J. Eq. 21,* was clearly that the gift to Mrs. Jennings was not of an annuity to be paid absolutely, to the exhaustion of the principal, but was of the net income of a fund and that in view of the insufficiency of the estate to pay all legacies in full the fund was to be subjected to the same abatement as were the $5,000 Cohen legacies and that, to ascertain the amount of the fund which would be subjected to abatement, there should be a reference to a master to determine the value of the annuity as of the time the testamentary gift thereof became effective, namely, at the death of the testatrix' husband, and on that basis to determine and apply the same percentage of abatement to all four legacies, namely, the three legacies to the Cohens and the Jennings legacy. In reason, that would mean that the percentage of abatement was to be applied to the value of the life annuity as so ascertained. The will was thus construed to mean, in effect, that a fund was to be set up, the income of which was to be paid to Mrs. Jennings during her life, with remainder over. On such a construction the fund would, of course, abate *pari passu* with the Cohen legacies. Whether that was the correct construction is not an open question. There was no appeal from that determination, and the issues there decided are *res adjudicata.* Appellant may not, under cover of exceptions to the master's report, seek what is to all intents and purposes a reversal of a decree from which she did not appeal. That such is really the situation and that appellant's solicitor realized the legal aspect thereof are the more apparent because the first effort

was, *126 N. J. Eq. 493,* to undo the effect of the master's report by amending the final decree pursuant to which the reference was made and according to the terms of which the master reached his result. The decision upon which that decree rested held in part:

"By the language of paragraph 2 (of the will), these annual payments (of the $2,000 annuity) are definitely limited to the net income and it is that income alone which may be applied to their payment. * * * However, these four legacies, vesting at the same time and payable out of the same fund, *i. e.,* the residue, are in the same class and may be considered as general legacies—demonstrative in the sense that they are payable out of the same fund—and all are subject to abatement proportionately. *Titus' Adm'r* v. *Titus, supra; Rowe* v. *Rowe, supra; Chemical Bank and Trust Co.* v. *Barnett, 114 N. J. Eq. 4; 1 Rop. Leg. 410.* In order to determine the amount which should now be payable in satisfaction of the three Cohen legacies, there will be a reference to a master for the purpose of determining the value of Mrs. Jennings' annuity as of the date of the death of Samuel Levy and the amount by which each of the four legacies must abate in accordance with the practice suggested by Vice-Chancellor Backes in *Chemical Bank and Trust Co.* v. *Barnett, supra.*"

The reference to the Chemical Bank and Trust Company decision must be taken to mean that the practice suggested by Vice-Chancellor Backes in the *Chemical Bank and Trust Co. Case* was to be followed in so far as the same was applicable. In that case Vice-Chancellor Backes adopted the statement that "In all these cases arising upon the construction of wills, the real question is, whether that which is given is given as an annuity, or is given as the interest of a fund * * *;" and he determined that the legacy with which he was dealing was of an annuity and not of the interest of a fund and that consequently not only could it properly be paid to the exhaustion of the fund but the fund could be, and he directed that it should be, paid over forthwith to the annuitant; whereas the contrary result was reached by Vice-Chancellor Berry in his construction of the will in the present case. Plainly, therefore, that precedent

could not be followed to the point of exhausting the fund or transferring it to the annuitant; but it could be, and was, followed in computing the value of the Jennings life estate. The direction in the *Chemical Bank Case* was this:

"The American four per cent. table is adopted by Chancery rule 246 for calculating the gross value of dower, and, in common practice, is standard for computing life interests generally. It is also used by insurance companies in calculating life insurance premiums. The value of the annuities will be computed according to the combined annuity four per cent. tables now in general use by insurance companies for calculating the cost of annuities; it is based on modern actuarial experience, and it is common knowledge that the average life has been extended ten years in the past seventy. The annuitants are entitled to present values and the formula suited to present conditions is to be applied as the measure; a test of value is the cost."

The method of computation adopted by the master was that which the court had directed.

We conclude, therefore, that the disposition of the first and second exceptions is controlled by the original determination in the cause, *supra*.

The third exception goes to the cost of the administration of the Jennings fund. No convincing reason is given why the expense of the administration of that fund should be charged against the Cohen legacies.

The order appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—PARKER, J. 1.