768 A.2d 243 (2001)
338 N.J. Super. 121
In the Matter of the ESTATE OF Jennie TATEO.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 2001.
Decided March 21, 2001.
*244 Schumann, Hanlon, Doherty, McCrossin & Paolino, Jersey City, attorneys for appellant Gloria Gregovich (Charles J. Harrington, III, on the brief).
Albert B. Jeffers, Morristown, attorney for respondent Peter Tateo.
Before Judges PRESSLER, KESTIN and CIANCIA.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal in a probate action. Appellant Gloria Gregovich, formerly Gloria Parisi, the daughter of testatrix Jennie Tateo, brought this proceeding for a determination of her rights under her mother's last will and testament. She appeals from an order of the trial court dismissing her complaint. She challenges the court's conclusions first, that her bequest of $50,000 had abated by reason of there being insufficient funds in the estate to pay it and second, that the real property devised by the will to her brother Peter was a specific devise passing to him free of any claim by her. We reverse. We are of the view that the court's decision was contrary to the *245 decedent's probable intent and that appropriate application of the doctrine of probable intent requires that appellant's bequest be deemed to be a charge against the real property inherited by her brother.
Trial of the cause was based solely on the papers submitted to the court which consisted of decedent's prior wills, the will submitted to probate, and affidavits and certifications that were largely undisputed.[1] Consequently, the court treated the matter essentially as if there had been cross motions for summary judgment. We are satisfied that the absence of a genuine factual dispute permitted disposition in that manner. Our review of the trial court's determination, however, is based on the same standard as that governing the trial court. See, e.g., Graziano v. Grant, 326 N.J.Super. 328, 338, 741 A.2d 156 (App.Div. 1999); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998). Applying that standard, we reach a contrary conclusion.
Decedent, Jennie Tateo, died on October 14, 1998, at the age of 86 survived by her two children, Gloria Gregovich and Peter Tateo, and by two grandchildren, a child of Gloria's and a child of Peter's. Her last will, executed in April 1991, made these basic dispositions in the following order: $50,000 was left to Gloria; $5,000 was left to each grandchild; "all real estate which I may own at the time of my death" was left to Peter with a gift over to Gloria in the event Peter did not survive his mother; the residuary estate was left to Gloria and Peter equally; and joint bank accounts in the names of Peter and decedent were left to Peter. Peter was named the executor and Gloria the successor executrix.
At the time of her death, decedent's real property consisted of a three-family house in Boonton which was then free and clear of any mortgage or lien and had an assessed value of $168,000 and a market value reported by Peter, as executor, of $217,000. She never owned any other real estate. Decedent was then living in one of the units with Peter, who had moved in with her in 1991 after the failure of his marriage. The second apartment was occupied by the widow of decedent's brother, Attilio Amari. The widow died in January 1999, apparently then freeing that apartment for arms-length rental. We note in this regard that decedent had a very close relationship with her brother, who died in 1996, and she had directed in her 1991 will that he be permitted to remain in occupancy during his lifetime at "a reasonable rent ... which rent shall not increase by more than 10% per year." The third apartment was leased to unrelated tenants. The house had been in the family for many years, and in addition to Peter's return to his mother's apartment after his marriage failed, Gloria had also lived with her mother in 1989 and 1990 when her first marriage broke up, and then took occupancy of one of the rental apartments, where she lived between 1990 and 1995, when she remarried. She paid a modest rent of $300 monthly. Gloria had also occupied one of the rental units with her first husband between 1971 and 1983.
The only other assets of the estate, other than personal effects of minimal value, were two bank accounts jointly held by Peter and decedent, having a total date of death value of about $20,780. The record does not indicate whether these accounts were titled as joint accounts with the right of survivorship. In any event, about $11,000 was disbursed by Peter by way of administration expenses, and he distributed the sum of $9,500 to himself. If the bank accounts were titled with the right of survivorship, then obviously they passed outside the will and Gloria would have no claim thereto. If not, the excess of administration *246 expenses should, just as obviously, have been distributed to her in partial satisfaction of her bequest. In any event, Peter advised Gloria that, in effect, her bequest had abated because there were no funds with which to pay it, and this action ensued.
There are additional relevant facts. First, there is no doubt, as attested to by Gloria's affidavit and those of several people close to decedent, that decedent enjoyed a close and loving relationship with both her children. Although Gloria maintained her own home during her mother's last years, she visited her daily, took her shopping monthly, and had her to dinner every Sunday. The whole family typically celebrated holidays together. Decedent expressed to others her love for and pride in both her children and grandchildren and had also told several people close to her during her last years that she had cash of about $40,000 and that both her children would be provided for upon her death.
Finally, there is the evidence of decedent's previous wills. The earliest of these, executed in 1975, had left Gloria $10,000, her then only grandchild $5,000, and the entire residuary estate to Peter with a gift over to Gloria if Peter did not survive. A 1980 codicil to that will increased Gloria's bequest to $20,000. Her 1987 will was substantially the same as her 1991 will, that is, Gloria was left $50,000, Peter was left the real property, and the residuary estate was left to them equally. The only material difference between the 1987 will and the 1991 will was the addition of a $5,000 bequest for the then born second grandchild.
In reviewing the foregoing facts, the trial judge found that the gift of real estate to Peter was a specific devise and the gift of cash to Gloria was a general bequest. Applying the customary and statutory rules of construction, the judge concluded that since Gloria's gift was general, it alone was subject to abatement and its payment was not a charge upon the specific real estate devise. N.J.S.A. 3B:23-12. With respect to decedent's intent, the judge concluded as follows:
The fact also is that she seems over the years to have expressed an uneven giving plan in favor of Peter. It is, of course, possible that if Jennie Tateo had realized that her daughter was going to get virtually nothing under the will, she may have altered somewhat the provisions of her will. However, we have no solid way of knowing that she would have changed the provisions of her will, and, of course, we have no solid way of knowing what any change she might have made would be. On the other hand, we do have the actual language and provisions of the will which Jennie Tateo signed and they indicate, in my judgment, a clear intention that Peter Tateo should receive the real estate at 127 Boonton Avenue.
We are persuaded, however, that the trial judge gave insufficient consideration to the doctrine of probable intent and that proper consideration thereof impels a different result irrespective of whether the technical specific-general categorization of the two gifts, challenged by appellant, is correct.
The seminal decision defining the doctrine of probable intent as it is presently understood in this jurisdiction is Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 178 A.2d 185 (1962). Justice Jacobs, expanding the then rule that required determination of the testator's intent essentially from the four corners of the will itself, there made clear that the judicial inquiry must focus on the subjective intent of the testator as evidenced not merely by the text of the will but, primarily, by the testator's "dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding circumstances," ascribing to the testator, "[s]o far as the situation fairly permits `those impulses which are common to human nature ...'" Fidelity Union Trust Co. v. Robert, supra, 36 N.J. at 565, 178 A.2d 185 (quoting Greene v. Schmurak, 39 N.J.Super. 392, 400, 121 *247 A.2d 35 (App.Div.), certif. denied, 21 N.J. 469, 122 A.2d 528 (1956)). Moreover, courts should "strain towards effectuating the probable intent of the testator ...", id. at 566, 178 A.2d 185, and, since it is a particular testatrix's intent in a particular will construction case that is in issue, generally applicable canons of construction as well as precedents involving the construction of other wills have no controlling force. Id. at 568, 178 A.2d 185. Thus the essential endeavor the court must undertake "is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he `envisioned the present inquiry.'" Id. at 565-66, 178 A.2d 185 (citing Bank of New York v. Black, 26 N.J. 276, 287, 139 A.2d 393 (1958)). Consequently, a clearly ascertained probable intent can be effectuated by the court even if it means the deletion from, substitution of or insertion in the verbiage used in the will. Id. at 568, 178 A.2d 185. These statements of principle have been embraced by our courts since Robert and are inextricably woven into the fabric of our probate jurisprudence. See, e.g., Matter of Estate of Dawson, 136 N.J. 1, 9, 641 A.2d 1026 (1994); Matter of Estate of Branigan, 129 N.J. 324, 332-33, 609 A.2d 431 (1992); Engle v. Siegel, 74 N.J. 287, 291, 377 A.2d 892 (1977); In re Estate of Ericson, 74 N.J. 300, 306, 377 A.2d 898 (1977); Wilson v. Flowers, 58 N.J. 250, 260, 277 A.2d 199 (1971); In re Estate of Cook, 44 N.J. 1, 6, 206 A.2d 865 (1965). See also 5 New Jersey Practice, Wills and Administration, § 196, at 405-16 (Alfred C. Clapp) (rev. 3d ed. 1982); Alfred C. Clapp, Justice Nathan L. JacobsThe Doctrine of Probable Intent, 28 Rutgers L.Rev. 251 (1975).
The doctrine of probable intent, as thus judicially framed, was codified by the Legislature in its adoption of the revised Probate Code in 1982. Accordingly, the overarching rule of construction mandated by N.J.S.A. 3B:3-33 is that:
The intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction expressed in N.J.S. 3B:3-33 through N.J.S. 3B:3-48 apply, unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary.

[Emphasis added.]
And among the general rules of construction that are expressly identified as having to yield to probable intent is N.J.S.A. 3B:3-44, the rule respecting the beneficiary's rights in respect of a specific devise.
Guided by these principles, we now address the question of whether the terms of the will, its plan and purposes, and all the surrounding circumstances tell us clearly what decedent would have done by way of testamentary disposition had she known there would be no cash with which to pay the bequests to her daughter and grandchildren. We are persuaded that had she envisioned that eventuality in 1991 when she made her will, she would have provided for these gifts to have been paid as a charge upon the house.
To begin with, it is true that at least for purposes of testamentary disposition, decedent favored her son over her daughter. But the disparity between her gifts to them became less and less over the years as she changed her will to favor her daughter more and more. In the end, we can say with confidence that while her dominant plan remained that of favoring her son, she did not intend to favor him to the exclusion of her daughter. Her unchallengeable intention was that her daughter benefit to the stated extent under her will. Nor do the circumstances of the property itself suggest anything to the contrary. Had the house been a single-family residence in which Peter had been residing, it might well have been that her desire to provide him with a home would have been paramount. But that is not what we are dealing with here. This is a mortgage-free rental property which not *248 only provides Peter with a home, but which also constitutes a valuable income-producing capital asset. Not only does he have no mortgage payments to make, but he is also entitled to the market-rate rents, which probably more than offset his own residential expense. We think it is obvious that decedent would not have excluded her daughter and her two grandchildren from any benefit at all under the will while her son, to whom the joint bank accounts were also bequeathed, received everything she had to leave.
We cannot but take judicial notice of the increase in the value of property in northern New Jersey over the last decade. In 1991, the year in which the testatrix made her will, her property was assessed at a value of $73,600, with a common level of 41.43%, indicating a fair market value of more than $165,000. The testatrix was unable to read and write, and while she may surely have had an elementary grasp of financial matters, it cannot be said with any certainty that she appreciated the fair market value of her house beyond its assessment. By 1998, the date of her death, the property had been reassessed at a true value figure of $168,608, with a fair market value, according to Peter's accounting as executor, of $217,000. We refer to these financial facts as indicative of how the testatrix probably intended to apportion her estate between her children and grandchildren. If she had any idea that her property was worth in the neighborhood of $200,000, then she intended to give her daughter 25% of what she was giving her son and to give her grandchildren 2.5% each, or a total of 5% of the gift to her son. If, as is even more probable, she did not appreciate the value of the house, then her intention was to give her daughter and grandchildren an even greater relative percentage. That her daughter and grandchildren, whom she clearly intended to benefithaving changed her will to account for the second-born grandchild would not benefit at all, simply could not have been within her contemplation.
We are persuaded that under all the circumstances we have discussed, charging the real property with the gifts to Gloria and the two grandchildren, is the only result consistent with the probable intent of the testatrix. Gloria will still be receiving less than 25% of the value of her brother's gift and the two grandchildren will receive less than 2.5%. In the meantime, Peter will have still realized that which his mother intended him to have ownership of the house, a cost-free residence, and eventual entitlement to the income produced thereby after Gloria and the grandchildren are paid. In our view, that is patently the fairest possible result, the result most consonant with the decedent's probable intent, and a result that does no violence to the actual text and verbiage of the will.
The order appealed from is reversed. We remand to the trial court for consideration and determination of appropriate terms and conditions for the effectuation of payment to Gloria Gregovich and decedent's two grandchildren. We do not retain jurisdiction.
NOTES
[1] It appears that while the parties were prepared to proceed with testimony on the day of trial, they agreed to submit on the papers because a recent fire in the court house made proceeding on that day impossible and because they apparently both took the view that the papers were adequate.