**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0529-20

IN THE MATTER OF THE
BIERSTADT PAINTINGS
CHARITABLE TRUST,
DATED OCTOBER 6, 1919
BETWEEN DR. JONATHAN
ACKERMAN COLES,
GRANTOR, AND THE CITY
OF PLAINFIELD, TRUSTEE.

Submitted June 7, 2021 – Decided July 20, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000072-20.

Rainone Coughlin Minchello, LLC, attorneys for appellant City of Plainfield (David L. Minchello and Brian P. Trelease, on the briefs).

Schiller, Pittenger & Galvin, PC, attorneys for respondent Scotch Plains Baptist Church (Richard M. Cohen, on the brief).

PER CURIAM

In 1919, J. Ackerman Coles, a well-known doctor, art collector and philanthropist, gifted inter vivos two paintings to the City of Plainfield (City). The paintings by Albert Bierstadt are held in a charitable trust by the City and have been displayed in the City's library and municipal building. The City contends that one of the paintings – "The Landing of Columbus" – depicts racial themes and undertones. Therefore, the City instituted this lawsuit, requesting a modification of the trust so it can sell the paintings.

The trial court found the paintings were donated for their historical and artistic value in memory of Coles' father. And there was no indication that Coles intended for the trustee to sell the works. Therefore, the court denied the City's application. We affirm.

As stated, Coles offered the two eight-by-twelve-foot masterpiece paintings to the City in a charitable trust with the City acting as trustee. The second painting – a landscape – is entitled "Autumn in the Sierras." The City does not contend that work is controversial.

Coles offered the paintings in memory of his father, Dr. Abraham Coles, who was born in Scotch Plains and was a teacher in Plainfield before he became a physician and surgeon. In the letter to the City offering the gift, Coles described Bierstadt as a "world renowned artist" and referenced his works then

2

displayed in the Metropolitan Museum of Art in New York City and the Corcoran Gallery in Washington D.C. In discussing the "Columbus" painting and a companion painting to the "Sierras" work, Coles stated that "[f]ew paintings, if any, of modern date equal in beauty, merit and historic value . . . ."

On the same day, the Common Council of Plainfield issued a resolution on behalf of the people of the City, accepting the paintings and thanking Coles "for his very generous and thoughtful gift . . . ."

The following day, a newspaper article reported on the donation, noting the paintings' value of $70,000. The article stated that Councilman Charles S. Sminck "declared [the paintings] were an expression of intellectual and artistic temperament of a man who made his personality felt in this community many years ago." Sminck spoke of "the historic value" of the "Columbus" painting and "said that arrangements should be made for placing these paintings where they could be viewed by the lovers of art and an inspiration to the youth of our city."

One hundred years later, the City filed a verified complaint and order to show cause seeking a modification of the trust under the cy pres doctrine and N.J.S.A. 3B:31-29(a). The City asserted the "Columbus" painting contained "racist implications" and "to display it in a public forum in a community

3

comprised mostly of people of color [would] only continue[] to cause irreparable harm."

The City further alleged that the "Columbus" painting "no longer provides aesthetic enjoyment to the community" and is a "source of constant controversy" and therefore the charitable purpose of the trust is impracticable. The City contended the only remedy was judicial modification of the trust pursuant to the cy pres doctrine to enable a sale of both paintings. The City advised the proceeds from the sale would be held in trust by the Plainfield Promise, a charitable organization that would use the money to create a financial literacy program for the City's youth, create a college scholarship fund for City residents, and establish and construct the "Plainfield Center of Excellence", a recreational educational facility.

Although the City concedes the "Sierras" work is not offensive, the City also seeks its sale, asserting the municipality does not have the economic resources to maintain and protect the "highly valued" paintings. In 2016, "Columbus" was appraised at $15 million dollars, and "Sierras" was valued at $4.5 million dollars.

The City notified the Attorney General's office of the litigation. In a September 2, 2020 letter to the court, the Deputy Attorney General stated:

A-0529-20

In light of the current social climate, the racist themes depicted by the Landing of Columbus, and the costs related to displaying, storing, and protecting the Bierstadt Paintings, this Office agrees that it has become impracticable for the City of Plainfield to display the Biersatdt [sic] Paintings and does not object to the sale of the Bierstadt Paintings and the repurposing of the proceeds for the benefit of the citizens of the City of Plainfield in accordance [with] N.J.S.A. 3B:31-29 and the cy pres doctrine. Nevertheless, while we acknowledge that the plan to use the proceeds from the sale in accordance with the Plainfield Promise is well-intentioned, we are uncertain whether such use would be as near as possible to what the Grantor intended. Thus, we take no position on the use to be made of the proceeds from the sales of the Bierstadt Paintings.

We recognize that under both N.J.S.A. 3B:31-29 and the common law cy pres doctrine, only the [c]ourt may modify the will after consideration of the facts and circumstances presented. [Howard Sav. Inst. of Newark, N.J. v. Peep, 34 N.J. 494 (1961); Cinnaminson Twp. v. First Camden Nat'l Bank & Tr. Co., 99 N.J. Super. 115, 127-29 (Ch. Div. 1968)]. Thus, we leave the ultimate decision on the modification of the Trust, the sale of the paintings, and the use of the proceeds to the discretion and sound judgment of the [c]ourt.

A representative of the Scotch Plains Baptist Church also submitted a letter to the court.[1] In the letter, the church representative referred to Coles' will,

---

[1] During oral argument on the order to show cause, the City informed the court that the Baptist Church was a beneficiary under Coles' will. Coles died in 1925.

as well as a prior lawsuit Coles brought against the City of Newark when it attempted to move and replace a statue Coles had gifted to Newark.[2]  The letter stated:

> The reason I believe this court is in session today is to try and attempt to determine what J.A Coles' intentions were when he donated the art work.  In the case above, Newark was trying to move the statue to a slightly less prominent area of Lincoln Park and replace it with a World War I memorial.  J.A Coles sued the city as he felt his gift honoring his father was being arbitrarily removed after both the donor and the City felt its original location was optimal.  If J.A Coles would sue the City of Newark for attempting to relocate a memorial to his father, do you believe he would turn a blind eye toward the City of Plainfield's attempt to sell the two paintings?
>
> I really don't know where one stands on the exploits of Christopher Columbus.  I believe as public sentiment toward Columbus has soured, the City of Plainfield sees this as an opportunity to cash in by selling two masterpieces that were given to the City to hold in trust for public enjoyment.  If the City feels such moral contempt for the scene depicted in the paintings, then why don't they donate the masterpieces to the Smithsonian or some other accepting museum?
>
> If the City's intention, and I think it is, is to sell the paintings and use the proceeds for something other than J.A Coles' wishes, then I believe the funds that are

---

The City's attorney stated Coles did not have any children and there were no longer any living heirs.

[2]  <u>Coles v. City of Newark</u>, 95 N.J. Eq. 73 (Ch. Div. 1923).

A-0529-20

generated from the sale should be remanded to J.A Coles' estate. J.A Coles ultimately left his estate in [nineteen] shares to at least [eleven] charities around the world. In his will, J.A Coles was very specific on how each heir could use their inheritance. In many cases the recipients were instructed to invest the principal and use the interest to carry on. I believe J.A Coles had a vision that his gifts had a story to tell while in some cases also honoring a great man that he both loved and respected. And he set his gifts up that they would become eternal flames.

I believe there is enough information about Dr. J.A Coles, that a prudent man would have the ability to determine his wishes regarding the many legacies he had the opportunity to bestow during his lifetime. I have enclosed with this letter J.A. Coles [sic] last will and testament, an article from the Courier news about the Bierstadt donation from 1919 and several articles about Coles and past sale attempts by the City of Plainfield.

As the court attempts to render an equitable decision on what to do, I believe that if Dr. Coles wanted to write The City of Plainfield a check in honor of his father he would have done so. The fact that the two masterpieces have increased in value brings us to the point we are today. However, it is our belief that funding special projects, no matter how appealing is irrelevant in this case. If the City of Plainfield feels they can no longer serve as a Trustee and if their only recourse is a sale of the paintings, then the court should either find a new Trustee or use J.A Coles' last will and testament to determine what his wishes would be with regard to the proceeds of the sale. I then believe the court would determine that the proceeds would be split amongst the many charitable institutions that to this day remain J.A. Coles' legal heirs.

7

A-0529-20

No one from the church appeared at the hearing.[3]

Following oral argument, Judge Robert J. Mega, P.J. Ch., issued a well-reasoned oral opinion. In addition to the church letter, the judge considered Coles' will, a 1986 memorandum from the City Solicitor addressing a potential sale of the paintings, and a 1987 letter authorizing the exhibition of the Bierstadt paintings in the New York Society Historical Society Museum.[4]

In considering the intent of Coles' gift, Judge Mega found:

> These paintings were donated . . . for their artistic and historical value in the memory of [Coles'] father. Now, I respect the fact that some people may disagree as to whether it's artistic or whether it contains value, but where one disagrees, others may agree.
>
> And again, it's not this [c]ourt's job at this point to determine anything but the intent of the donor. Plaintiff does not sufficiently demonstrate why the paintings could not be placed in a different location such as a museum, and as the prior letter said, displayed as the Plainfield, New Jersey Bierstadt Paintings; to display their historical value, rather than selling them.

The judge stated further:

> [I]t's apparent from the extrinsic evidence that this [c]ourt has examined th[at] Coles would not have intended to have the paintings sold. It appears that Coles' will evidences specific intent in the way he

---

[3] The church submitted a brief in the appeal.

[4] The paintings were displayed as the "Plainfield, New Jersey Collection."

devised the shares with specific instructions [and] also the way that he donated things . . . [of] value donated from the Coles family and simply not something that they could have liquidated and donated money.

The extrinsic evidence also demonstrates to this [c]ourt that Coles' specific intent to donate the Bierstadt Paintings for their artistic beauty and historical value was in memory of his father.

Again, that was their interpretation a[t] the time of the donative intent. To Coles, the intrinsic value of the paintings [was] beyond their monetary worth. There is no indication that Coles . . . would have wanted the paintings to be sold.

The [c]ourt is following the policy of preserving the charitable trust where possible. The preservation of the Bierstadt Paintings is possible and not impractical. If the City . . . finds the paintings' current location offensive, they are permitted to relocate the paintings or donate them to a museum to follow the honor of Dr. Coles' father[.]

. . . .

There are practical channels here where Plainfield can remain as the owner, donate them outside of the City or have them out of the City that could be explored to keep the donative intent in the memory of Dr. Coles alive and well.

. . . .

[W]hat did the donor want? Clearly, he wanted to donate it, displayed in memory of his father to preserve the works of his father.

9

By liquidating them, that would be gone. There is no oversight as the [Attorney General]'s office had pointed out. There is no oversight . . . as to how practically . . . money [would ]be managed . . . [,] how would it be set up. . . . [I]t doesn't appear to be practical to have these items liquidated and the trust be commissioned, if you will when the items can be clearly sent and displayed in the memory of . . . his father as part of the Plainfield, New Jersey Bierstadt Collection.

Accordingly, the [c]ourt when I looked at this art as it is purported to be art, again, I'm not an art afficionado, but that's what it was donated as, and clearly these paintings have an extreme value worth millions of dollars but the worth of those paintings even by 1919 standards was valued at $70,000 where if the Coles family wanted these paintings liquidated, they could have sold them and given [the City] the $70,000. They didn't. [Coles] donated them in the memory of [his father] . . . .

So, it appears to this [c]ourt that Coles [sic] . . . donative intent of the Bierstadt Paintings was for what Coles believed to be its artistic[] beauty, historical value, and inspiration for the youth in the memory of his father.

It all comes down to that; what the donor's intent was when they were donated. So, [the City's] order to show cause for judicial modification of the charitable trust is denied based on all of the aforesaid readings and evidence and application of the case law. . . .

On appeal, the City asserts the trial court erred by failing to modify the charitable trust to allow it to sell the two paintings and use the proceeds to fund the Plainfield Promise.

10

A-0529-20

In reviewing a summary action conducted pursuant to Rule 4:67, we use the substantial credible evidence standard. See O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172-73 (App. Div. 1997) (applying substantial credible-evidence standard in reviewing a decision from a summary action). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). "Our review of a trial judge's legal conclusions is de novo." Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171, 179-80 (App. Div. 2012) (citations omitted).

It is undisputed that the City holds these paintings as trustee of a charitable trust. "A gift for the benefit of an indefinite number of persons, by bringing their minds or hearts under the influence of education or religion, among other purposes, is a charity in the legal sense." Wilber v. Owens, 2 N.J. 167, 174 (1949). "A trust is charitable if the subject property is devoted to the accomplishment of purposes which are beneficial . . . to the community." Ibid. See N.J.S.A. 3B:31-22(a) (defining a charitable trust as "one that is created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purpose the achievement of which is beneficial to the community").

11

The City contends the "Columbus" painting can no longer be displayed because of the "social ramifications of maintaining such a controversial and offensive painting in a majority, minority city." It states the painting "no longer provides aesthetic or artistic pleasure to the City." Therefore, the City requested that the trial court invoke the cy pres doctrine.

The cy pres doctrine is a "judicial mechanism for the preservation of a charitable trust when accomplishment of the particular purpose of the trust becomes impossible, impracticable or illegal." Sharpless v. Medford Monthly Meeting of Religious Soc. of Friends, 228 N.J. Super. 68, 74 (App. Div. 1988) (citing Howard Sav. Inst. v. Peep, 34 N.J. 494, 500 (1961)). The doctrine is codified in N.J.S.A. 3B:31-29(a), which states that:

> if a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful: (1) the trust does not fail, in whole or in part; (2) the trust property does not revert to the settlor or the settlor's estate; and (3) the court may modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes.
>
> [N.J.S.A. 3B:31-29(a).]

If a "settlor manifests an intent to devote the trust to a charitable purpose more general than the frustrated purpose, a court may apply the trust funds to a charitable purpose as similar as possible to the particular purpose of the settlor

instead of allowing the trust to fail." Sharpless, 228 N.J. Super. at 74 (citing Howard Sav. Inst., 34 N.J. at 500-01).

The court must determine whether the settlor "would . . . have wanted the trust funds devoted to a like charitable purpose, or would [the settlor] have wanted them withdrawn from charitable channels." Ibid. (citation omitted). However, because a settlor rarely contemplates the non-fulfillment of a trust, "the court must make an educated guess based on the trust instrument and relevant extrinsic evidence as to what [the settlor] would have intended had he been aware of the contingency which has frustrated the exact effectuation of [the] expressed intent." Ibid.

Therefore, in applying the cy pres doctrine, a court must make two determinations. First, a court must determine if accomplishment of the particular purpose of the trust has become impossible, impracticable or illegal. Howard Sav. Inst., 34 N.J. at 500. If the court makes such a finding, it can apply the trust funds to a charitable purpose as nearly as possible to the particular purpose of the settlor if there was a general intent to promote charity. Id. at 501.

Judge Mega considered and rejected the City's argument that it was impracticable to retain the paintings, stating "[the City] does not sufficiently

demonstrate why the paintings could not be placed in a different location such as a museum . . . ."

We are not convinced by the City's argument that current social perceptions of Columbus render the continued ownership of the paintings impracticable.  The City is free to display the painting in any location it chooses.  Even if the City decides not to display the painting, it can be donated to a museum where it can be appreciated and valued for its artistic value – consistent with the original intent behind the donation.  Clearly, the appraised value of the painting reflects it remains a highly coveted work of art.

We are satisfied that Judge Mega supported his finding with substantial evidence that plaintiff has not demonstrated the accomplishment of the trust has become impossible, illegal, or impractical.  Therefore, although we need not consider the second prong under the cy pres doctrine, we will do so briefly.

If the City was able to establish the impracticability test, the paintings can only be sold if a court finds that Coles originally donated them with the general intent to promote charity.  Because the City has not demonstrated that intent, cy pres cannot be applied to modify the trust.

The letter offering the paintings to the City states that the donation is in memory of Coles' father.  The letter refers to the beauty, merit, and "historic

14

value" of the "Columbus" painting. Coles included a passage from the American short story writer Washington Irving's book "Life of Columbus."

In its resolution accepting the works, the City stated the paintings should be displayed where "they can be viewed by the lovers of art and serve as an inspiration to the youth of our city." The City has not presented any evidence to support a finding of a general charitable intent. If Coles intended to support education in the community, as the City asserts, he would likely have made a monetary donation or bequest, not an inter vivos gift of two masterpiece paintings valued by him higher than any dollar amount.

Judge Mega also found a prior case regarding a donation made by Coles to be instructive of the philanthropist's intent here. That litigation arose after Coles gifted the City of Newark a statue in 1895 – called "The Indian Group." Coles, 99 N.J. Eq. at 74. When Newark decided to move the statue from its original position in a park to a "slightly less prominent site in the park," Coles instituted suit to enjoin the move. Ibid.

The court found that when Newark became the trustee for the public, Coles lost all property rights in the statue and Newark could move it to another location. However, the court warned that if Newark were to dispose of the statue

by sale "or demolish it, arbitrarily, [that] would be an abuse of the trust the city owes the public, and would be enjoined . . . ." Ibid.

The case is illustrative of Coles' intent as he attempted to enjoin Newark from simply moving a statue from one location within a park to another area in the same park. Given this precedent, it is highly unlikely that Coles would be amenable to the sale of the paintings treasured by him and donated to the City in the memory of his father.

There is ample evidence in the record to support Judge Mega's finding that Coles donated the paintings as art to be viewed and enjoyed by the community. To liquidate the trust and use the proceeds for education is not consistent with that intent.

Any further arguments not addressed are without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                              A-0529-20