**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3604-21

IN THE MATTER OF THE
ESTATE OF BARBARA ELLEN
HEINECKE, deceased.

_____

Submitted February 6, 2024 – Decided March 15, 2024

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Burlington County, Docket No. P-2021-1101.

Levin & Associates, attorneys for appellant New Jersey Society For the Prevention of Cruelty to Animals (Harry J. Levin, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Michael John O'Malley, Deputy Attorney General, on the brief).

PER CURIAM

In this probate matter, appellant NJSPCA, Inc., challenges a June 23, 2022

Chancery Division order that modified a will under the cy pres doctrine to

redistribute a devise intended for the now-defunct New Jersey Society for the Prevention of Cruelty to Animals (NJSPCA)[1] to other charitable organizations identified in decedent Barbara Ellen Heinecke's Last Will and Testament (the Will). We affirm in part, as we are satisfied the devise to the NJSPCA was impossible and the court did not err in determining redirection to NJSPCA, Inc., would have been inconsistent with Barbara Heinecke's testamentary wishes, but reverse in part as to the redistribution to the other identified charities and remand for further proceedings consistent with this opinion.

I.

We begin by reciting the relevant underlying facts and procedural history. Barbara Heinecke died testate on April 9, 2021. The relevant portion of paragraph six of her Will,[2] dated January 19, 2012, provides:

> C. I give [twenty-five percent] of my residuary estate (the THIRD SHARE) as follows:
>
> In equal shares to each of the following charitable tax-exempt organizations:

---

[1] "NJSPCA" refers to the original entity, while "NJSPCA, Inc." or "appellant" refers to the reincorporated entity.

[2] Although the court indicated it had a copy of the will, for reasons not explained, neither party included a complete copy in the record. We rely upon the recitation of paragraph six as set forth in the complaint, as no party has disputed its accuracy.

A-3604-21

i. The American Humane Association . . . ;

ii. <u>The New Jersey Society for the Prevention of Cruelty to Animals</u> presently of 1119 Livingston Avenue, New Brunswick, New Jersey 08901;

iii. The Christian Relief Services, . . . ;

iv. The International Relief Fund, . . . ;

v. The National Wildlife Federation, . . . ;

[vi.] The World Wildlife Federation, World Wildlife Fund, . . . .

D. I give [twenty-five percent] of my residuary estate (the FOURTH SHARE) as follows:

In equal shares to each of the following charitable tax‑exempt organizations:

b. [sic] Family Service of Burlington County, . . . and

c. The Elephant Sanctuary in Tennessee . . . .

[Emphasis supplied.]

After Barbara Heinecke's death, the estate's co-executors filed a Verified Complaint for Advice and Direction and for Cy Pres Relief pursuant to <u>Rule</u> 4:95-2,[3] seeking direction as to the disposition of funds bequeathed to the

---

[3] As permitted by <u>Rules</u> 4:83 and 4:95-2, executors may bring a summary action under <u>Rule</u> 4:67, "for instructions as to the exercise of any of their statutory

NJSPCA and the International Relief Fund (IRF).[4] They alleged both organizations were defunct and suggested the court distribute the shares equally among the remaining charitable beneficiaries listed in the Will. The estate also sought counsel fees and costs from the beneficiaries who would receive an increased share.

The estate explained legislation approved in January 2018, L. 2017, c. 331, repealed the statutes governing the "administration, authority, and duties" of the NJSPCA, directed the Attorney General to "take any action necessary to facilitate the reincorporation of the [NJSPCA] as a non-profit corporation independent of the State," and transferred responsibility for enforcement of animal cruelty laws from the NJSPCA to county prosecutors and municipal law enforcement agencies. Further, the estate noted mailings to both the NJSPCA and IRF were returned as "not deliverable" and "unable to forward." IRF did not participate in the litigation in the court, or before us.

Appellant filed a December 6, 2021 certification of its counsel in lieu of an answer. In it, counsel stated he had represented both the NJSPCA and

---

powers, as well as for advice and directions in making distributions from the estate."

[4] The quantum of the devise is not stated in the record before us.

NJSPCA, Inc., for over thirty years and was personally familiar with "the underlying facts." He attested NJSPCA, Inc., was reincorporated March 7, 2019, all the assets of the original entity were transferred to it, and NJSPCA, Inc., had a mission "precisely consistent" with that of the original entity except for law enforcement. Counsel therefore concluded "[t]he newly incorporated NJSPCA[, Inc.], as authorized by the express language of the [s]tatute, is the successor in interest of what was the primary animal cruelty/welfare law enforcement body in this state" and the court should apply the doctrine of cy pres to redirect Barbara Heinecke's devise to appellant.

The Attorney General, appearing in its role as protector of the public's interest in charitable gifts, objected and responded in a December 13, 2021 letter that relied upon a State Commission of Investigation (SCI) report entitled "Wolves in Sheep's Clothing: New Jersey's SPCAs [Seventeen] Years Later." The October 2017 report detailed numerous concerns and problems with the operation of the NJSPCA, including: 1) the loss of its 501(c)(3) status for failing to file tax forms for three consecutive years, 2) untimely responses to calls reporting animal cruelty, 3) inadequate record keeping about enforcement activities, 4) officers exceeding their statutory authority and failing to timely renew their commissions to carry firearms and make arrests, 5) a lack of funding

oversight or financial tracking, 6) excessive spending on legal fees to appellant's counsel, and 7) deficiencies in filings with the state Division of Consumer Affairs.

The court heard oral argument where appellant contended it was the successor entity to the original NJSPCA and its mission was "within the clear parameters of what the testator . . . intended for this money to go to: animal cruelty . . . and to animal welfare." Although appellant conceded it performed no law enforcement functions, it nevertheless asserted its mission of animal welfare was shared with the NJSPCA. It also noted in other cases devises intended for the NJSPCA had been transferred to NJSPCA, Inc., but provided no support for its claim.

The Attorney General responded the primary function of NJSPCA, Inc., was fundamentally different from the law enforcement role of the NJSPCA. Because the NJSPCA no longer existed in the form it did at the time Barbara Heinecke created her will, and NJSPCA, Inc.'s, mission substantially differed, the Attorney General argued redistribution of the devise among the other designated charities was more consistent with the decedent's intent.

The estate made several inquiries of appellant's counsel on the record in an attempt to determine whether NJSPCA, Inc., was a "legitimate" and "tax-

6

exempt" charitable organization. Appellant's counsel confirmed the entity's official address was his law office and appellant had "no employees in the traditional sense" beyond a web designer. He was unable, however, to provide the "names and addresses of current officers and members of the board of trustees," their positions, the new entity's employer identification number, or to confirm whether there were "any holdovers [on the board] from the former NJSPCA" or whether NJSPCA, Inc., was listed on websites like GuideStar or Charity Navigator.

The estate also highlighted its concerns about NJSPCA, Inc.'s, financial circumstances, currently active programs, budgeting, and administrative and legal expenses, about which appellant had provided no information. In light of the issues raised by the estate and the Attorney General, appellant requested additional time to respond, which the court granted.

Thereafter, appellant submitted various documents to support its position NJSPCA, Inc., was a legitimate charitable organization, including: 1) a certificate of good standing with the New Jersey Department of the Treasury, 2) a New Jersey certificate of incorporation as a non-profit, 3) a letter from the IRS confirming its 501(c)(3) status, 4) a screenshot of its website, 5) a letter from the IRS confirming its employer identification number, and 6) a draft tax return

7

for 2021 listing its primary purpose as "education to the public on animal welfare issues." Appellant's counsel also provided two additional certifications dated January 12, 2022 and February 1, 2022 that addressed his involvement with NJSPCA, Inc.'s, reincorporation and the organization's plans for the future, including publication of a handbook educating children about animal cruelty, advertising in local newspapers, and participating in the New Jersey Animal Show.

Specifically, counsel certified to the court the submitted documents established NJSPCA, Inc., was recognized by the state, in good standing, and current on required filings. While admitting "[t]he mission of the predecessor organization was primarily the advancement of animal welfare through investigation and enforcement of the animal cruelty laws," counsel attested the NJSPCA's work also "included educating the public on issues relating to animal welfare and cruelty." According to counsel, appellant was continuing that mission but was "severely limited" by difficulty accessing schools and "educational outlets" during the COVID-19 pandemic.

The Attorney General filed two letter briefs on January 19, 2022 and March 2, 2022, again opposing appellant's application. In those submissions, the Attorney General argued appellant had still failed to provide much of the

information requested during the December 2021 hearing, and the documents it had provided "raised even more concerns." The Attorney General also filed additional documents it had received from appellant, including tax returns for tax years 2019 and 2020, and board meeting minutes.

Some of the problems raised by the Attorney General included the late filing of NJSPCA, Inc.'s, 2019 and 2020 tax returns in February 2022 and the inconsistencies and contradictions in the submitted documents. For example, it noted the 2019 tax return stated appellant's limited activity during that year was "in part due to the pandemic," which did not begin until 2020. Additionally, it pointed out while appellant's tax returns indicated funds were kept in an attorney trust account, counsel's first and third certifications stated the funds were held in segregated bank accounts.

The court again considered the parties' oral arguments on March 18, 2022. The Attorney General argued the NJSPCA and NJSPCA, Inc., were different organizations, with the original entity identified in the Will no longer in existence. The Attorney General further highlighted various concerns it had with respect to NJSPCA, Inc., including the lack of board meetings or tax filings between appellant's reincorporation in March 2019 and February 2022, its failure to register with the Division of Consumer Affairs, insufficient

9

explanations for its expenditures, and confusion over the number of members on its board and election procedures for same. Additionally, the Attorney General reasserted redistribution to the other charities designated in the Will was consistent with Barbara Heinecke's intent.

Appellant reprised its argument the "overriding mission" of both the NJSPCA and NJSPCA, Inc., "has always been animal welfare, animal protection, identification of animal cruelty, and assisting law enforcement in the prosecution of those who have been charged with animal cruelty." It explained it was properly reincorporated, obtained "charitable status from the IRS," and was continuing the same mission of "protection of animal welfare in the state of New Jersey." Appellant further maintained the devise did not identify a specific purpose or that it was intended for law enforcement, but rather was a "general gift to the organization without restrictions."

During appellant's argument, the court interrupted, asking counsel to "curtail [him]self and get right to the legal argument," as counsel had provided extensive background on NJSPCA dating back to its formation in 1863. We note at this point in the proceedings counsel's argument extended for five and one-half pages of the transcript and continued for an additional four pages thereafter.

The court issued an order granting the relief requested by the estate and explained its decision in an accompanying written statement of reasons. In sum, the court applied the cy pres doctrine and ordered the devises designated for IRF and the NJSPCA be "distributed in equal shares among the other charitable beneficiaries named in Paragraph S[ix] C" of the Will and granted the estate's request for counsel fees and costs.

In applying the cy pres doctrine, the court found a charitable intent "evident" in the Will, noting section C of paragraph six designated twenty-five percent of the residuary estate to specific charities, "with many having environmental/conservation focuses," and section D designated an additional twenty-five percent to other named charities. Because IRF appeared defunct and had not responded despite being served at its designated address, the court found decedent's gift to IRF had lapsed. It noted appellant conceded the original NJSPCA no longer existed, and the question before it was thus "whether the court should modify this specific bequest to be consistent with the settlor's charitable goals, and, if so, whether NJSPCA, Inc., has demonstrated it is now entitled to these funds."

The court found "the Attorney General convincingly disputed [appellant]'s representation that it operates as a charitable institution and is the successor to

11

the NJSPCA."  Specifically, the court noted NJSPCA, Inc., "appears to be primarily an advisory organization with its focus having shifted [from enforcement] to fostering discourse."  Additionally, the court credited the Attorney General's "concerns as to whether [NJSPCA, Inc.,] is an active organization and the fact that it is not a registered as a charity with the New Jersey Division of Consumer Affairs."

Because these differences "fundamentally alter the way in which the organization operates" and it was "not convinced that this new organization is continuing the intended ancillary purposes of the former NJSPCA," the court found it "unclear whether the decedent would have wanted her funds to go to this purported successor organization, following the removal of its enforcement power."  Accordingly, it concluded application of cy pres to redirect the devises intended for IRF and the NJSPCA to the remaining charities designated by Barbara Heinecke was more consistent with her intent.  This appeal followed.

II.

Before us, appellant asserts the court erred in applying the cy pres doctrine to redistribute the devise from the NJSPCA to the other charities designated in paragraph six of the Will.  It specifically contends "[t]he bequest never needed to be modified since it was clear that the Will instructed the residuary share to

12

be given to the NJSPCA" and "the new NJSPCA[, Inc.,] is a charitable organization that is continuing the mission of the old [NJSPCA]."  It also argues the "minor difference" in the two entities' duties and powers "should not result in deviating from the clear intent of the [d]ecedent," which it contends was to provide for animal-related causes irrespective of enforcement authority.  Finally, appellant asserts the court's interruption of its argument improperly limited its ability to fully explain its position.

In requesting we affirm, the Attorney General asserts the court properly applied cy pres as there was no evidence Barbara Heinecke "would have supported [NJSPCA, Inc.,] with its wholly different mission and purpose," while redirection of the devise to the other charities listed in the Will was "more consistent with the [d]ecedent's intent."

We first address the applicable standard of review governing our review.  We affirm a court's decision in a summary action under Rule 4:67 as long as it is supported by substantial credible evidence in the record.  O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172-73 (App. Div. 1997).  We decline to disturb "factual findings and legal conclusions of the trial judge unless convinced that [they] were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the

13

interests of justice.'" Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Rova Farms Resort v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974)).

The cy pres doctrine "is a judicial mechanism for the preservation of a charitable [disposition] when accomplishment of the particular purpose of the [gift] becomes impossible, impracticable or illegal." Sharpless v. Medford Monthly Meeting of Religious Soc'y. of Friends, 228 N.J. Super. 68, 74 (App. Div. 1988) (quoting Howard Sav. Inst. of Newark v. Peep, 34 N.J. 494, 500 (1961)). Courts applying cy pres "are guided by the policy of preserving charitable trusts whenever possible and by the established presumption against partial intestacy." Howard Sav. Inst., 34 N.J. at 501. The doctrine is codified, as applied to trusts, at N.J.S.A. 3B:31-29, which provides:

> if a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful:
>
> (1) the trust does not fail, in whole or in part;
>
> (2) the trust property does not revert to the settlor or the settlor's estate; and
>
> (3) the court may modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes.

[N.J.S.A. 3B:31-29(a)].[5]

Where the donor manifests a "general charitable intent," rather than allow an impossible gift to fail, the court may redirect the funds "to a charitable purpose as nearly as possible to the [original] particular purpose." Sharpless, 228 N.J. Super. at 74 (quoting Howard Sav. Inst., 34 N.J. at 500-01). A "general charitable intent . . . does not require an intention to benefit charity generally" but "only a charitable purpose which is broader than the particular purpose the effectuation of which is impossible, impracticable or illegal." Howard Sav. Inst., 34 N.J. at 501. Stated differently, the question is whether the donor would "have wanted the trust funds devoted to a like charitable purpose, or would he [or she] have wanted them withdrawn from charitable channels." Ibid. (quoting 4 Scott on Trusts § 399 (1956)). The absence of any provision directing the devise revert to the estate or other heirs in the event of its failure may signify a general charitable intent. Id. at 504.

At its core, the cy pres doctrine is "an intent-enforcing doctrine." Id. at 501. In construing a testator's intent, the court must "focus on the subjective

---

[5] We acknowledge the statute refers to charitable trusts. The doctrine has been applied to devises in circumstances similar to those here. See, e.g., Rowe v. Davis, 138 N.J. Eq. 122, 125-29 (Ch. 1946) (applying cy pres to redirect a devise intended for a defunct home for blind children to the home's parent organization, to be devoted to blind children).

intent of the testator as evidenced not merely by the text of the will but, primarily, by the testator's 'dominant plan and purpose as they appear from the entirety of his [or her] will when read and considered in the light of the surrounding circumstances.'" In re Est. of Tateo, 338 N.J. Super. 121, 127 (App. Div. 2001) (quoting Fidelity Union Tr. Co. v. Robert, 36 N.J. 561, 564-65 (1962)).  The inquiry is first confined "to the four corners of the [creating] document and the language therein," but the court may subsequently "consider the circumstances surrounding its execution and other extrinsic evidence of intention."  Tannen v. Tannen, 416 N.J. Super. 248, 264 (App. Div. 2010) (quoting In re Tr. Under Agreement of Vander Poel, 396 N.J. Super. 218, 226 (App. Div. 2007)).  As the Attorney General correctly noted, a devise made to a "charitable corporation is taken by implication, as intended to promote the purposes for which the corporation is created."  Montclair Nat'l. Bank & Tr. Co. v. Seton Hall Coll. of Med. and Dentistry, 96 N.J. Super. 428, 438 (App. Div. 1967) (quoting Rowe v. Davis, 138 N.J. Eq. 122, 125 (Ch. 1946)).

Upon determining the application of cy pres is appropriate, the court must determine how to redistribute the gift "to a charitable purpose as nearly as possible to the particular purpose of the [donor]." Howard Sav. Inst., 34 N.J. at 501; see also Sharpless, 228 N.J. Super. at 74 ("a court may apply the trust funds

16

to a charitable purpose as similar as possible to the particular purpose of the settlor") and <u>Restatement (Third) of Trusts</u> § 67 cmt. e (Am. L. Inst. 2003) ("if gifts are made to a charitable corporation that is subsequently dissolved, . . . the court may direct that the property be given to another corporation or association having similar purposes, in the absence of a contrary statute or provision in the terms of the gift"). Accordingly, determination of both the doctrine's applicability and the appropriate remedy turns on the donor's intent and purpose in making the gift.

We are satisfied the court's determination that the devise to the NJSPCA became impossible was supported by substantial evidence in the record. The organization has been dissolved by statute and no longer exists. NJSPCA, Inc., may share a name with the original NJSPCA, but at its core is a fundamentally different organization which no longer investigates animal welfare or enforces animal cruelty law.

We also agree redistribution of the devise to NJSPCA, Inc., would be inconsistent with Barbara Heinecke's expressed intent for all the reasons expressed by the court in its written opinion. As noted, a devise made to a "charitable corporation is taken by implication, as intended to promote the purposes for which the corporation is created." <u>Montclair Nat'l. Bank</u>, 96 N.J.

17

Super. at 438 (quoting Rowe, 138 N.J. Eq. at 125). As appellant's counsel himself certified, the NJSPCA's primary purpose was "the advancement of animal welfare through investigation and enforcement of the animal cruelty laws of the state of New Jersey." In contrast, appellant acknowledges NJSPCA, Inc., has no law enforcement authority nor does it conduct investigations related to animal cruelty. No party contended the Will demonstrated a contrary intent or that an evidentiary hearing was necessary.

We part ways with the court, however, in its decision to redistribute the devise to The American Humane Association, The Christian Relief Services, The National Wildlife Federation, and The World Wildlife Federation/World Wildlife Fund. Based on the court's findings, the investigation and enforcement of animal cruelty law was important to Barbara Heinecke and consistent with her intent as reflected in her devise to the NJSPCA. Thus, redirection of the funds allocated to the NJSCPA to entities without a similar purpose does not effectuate her intent.

Stated differently, Barbara Heinecke's choice of other beneficiaries in paragraph six does not mandate the court to redirect the gift intended for the NJSPCA to those specified organizations. Rather, the court must consider what would be "as similar as possible" to Barbara Heinecke's purpose in making her

18

gift to the NJSPCA.  Sharpless, 228 N.J. Super. at 74.  Nothing in the record indicates she would not have wanted her gift redirected to "another corporation or association having similar purposes."  Restatement (Third) of Trusts § 67 cmt. e.

Although IRF did not participate in the court or before us, we reach a similar conclusion with respect to the devise to that organization.  It is undisputed IRF is now defunct and the devise to it became impossible.  Based on the current record, Barbara Heinecke's gift for IRF was intended to promote the purposes for which that organization was created, which according to the materials appended to the complaint, was "[t]o promote international cooperation and understanding through interaction and dialogue" and "to empower women and children and promote ethics throughout Africa and in Iraq."  Redistribution to the designated animal, wildlife, and Christian relief charities does not, in our view, appear to effectuate that purpose.

For all these reasons, we affirm the portions of the court's order determining the devises to the NJSPCA and IRF were impossible and redirection of the devise to NJSPCA, Inc., would be inconsistent with Barbara Heinecke's intent.  We reverse, however, the court's order to the extent it ordered the redistribution of the devises to The American Humane Association, The

19

Christian Relief Services, The National Wildlife Federation, and The World Wildlife Federation/World Wildlife Fund.

On remand, the court should conduct further proceedings and make factual findings sufficient to effectuate the distribution of the devises to organizations with missions "as similar as possible to [Barbara Heinecke's] particular purpose[s]." Sharpless, 228 N.J. Super. at 74. The court should exhaustively explore charities and organizations to determine options that most closely resemble the NJSPCA's and IRF's original purposes, and redirect the devises accordingly. Nothing in this opinion should be construed as an expression of any view as to the outcome of those proceedings. Finally, to the extent we have not addressed any of appellant's arguments it is because after considering them against the record and applicable law, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION